UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MAUREEN MCGUIRE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:14CV1017 CDP |
| | ) | |
| ARNE DUNCAN, | ) | |
| Secretary of the U.S. Department of | ) | |
| Education, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Federal law allows certain student loan debt to be discharged if the educational institution falsely certified that the student was eligible for the loan. When plaintiff Maureen McGuire sought discharge of her student loans under this provision, the Department of Education denied the discharge. The relevant laws and regulations changed several times during the years McGuire was attending school. McGuire was not eligible for the loans at the time she took them out, because she did not have a high school diploma or the alternate educational qualifications then required, so the school's certification to the contrary was false. Additionally, the Department of Education relied on its regulations in denying her request for discharge, but some of those regulations are not consistent with the

statutes. I will therefore reverse the decision of the Department and remand the case for further administrative proceedings.

## **Background**

Plaintiff Maureen McGuire brings this case against Arne Duncan, the United States Secretary of Education, under the Administrative Procedures Act and the Declaratory Judgment Act. She seeks a declaration that the Department's refusal to discharge her student loans violated the Higher Education Act of 1965 (the HEA). She also requests an injunction requiring the Secretary to discharge her student loans and take other actions.

McGuire obtained the loans at issue while she was a student at the University of Missouri at St. Louis (UMSL). She did not take out the loans when she first began attending UMSL, but did so several years into her studies. Although she ultimately obtained a college degree, she had never graduated from high school and she did not have a GED. She also did not satisfy any of the remedial programs or specified test requirements that applied to some students under the federal regulations in effect at different times.

### *The Agency's Final Decision*

Before McGuire filed this lawsuit, the Department sent her a number of letters with different reasons why it believed she was not eligible for discharge. The parties agree that the final agency decision was issued December 16, 2013. In

that decision, the Department determined that McGuire was not eligible for

discharge based on UMSL's alleged false certification of her eligibility because

UMSL was not required to determine her ability to benefit or otherwise administer

an ability-to-benefit test when certifying her loan eligibility:

> [T]he Higher Education Act and the Education's regulations provide
> for discharge of loans made under [FFEL] in cases where a school has
> falsely certified a student's eligibility to borrow. 20 U.S.C. § 1087(c),
> 34 C.F.R. 682.402(e). A student's eligibility to borrow is considered
> to have been falsely certified by the school if the school certified the
> student's eligibility for a loan on the basis of an ability to benefit from
> its training and the student did not meet the applicable requirements
> described in 34 C.F.R. 682.402(e)(13).

> Despite this provision, you are not eligible for discharge . . . because
> UMSL was not required to determine your ability to benefit or
> administer an ability to benefit test to you. Under the Department's
> regulations in place when you entered UMSL, public or private
> nonprofit institutions of higher education like UMSL were only
> required to determine a student's ability to benefit for programs other
> than [FFEL]. See 34 C.F.R. 668.7 (1988) (enclosed). A student at a
> public or private nonprofit institution needed to either have a high
> school diploma or its recognized equivalent or be above the age of
> compulsory attendance in the State in which the institution was
> located. See 34 C.F.R. 668.7(a)(3) (1988). Only . . . vocational
> schools [and others] were required to determine that a student had the
> ability to benefit . . . in order to determine that a student was eligible
> to receive a [FFEL loan]. See id. The regulatory requirements were
> the same in 1991 when you obtained your first student loan (also
> enclosed).

ECF No. 1-5.

*Statutory and Regulatory Background*

Title IV of the HEA grants the federal government the authority to provide student financial assistance. *See* 20 U.S.C. § 1001, *et seq.* One such program, the Federal Family Education Loan Program (FFEL),[1] allows private lenders to make loans for "eligible borrowers" to attend "eligible" post-secondary institutions. *See* 20 U.S.C. § 1071 *et seq.* These loans are insured, and the Secretary provides reinsurance. *Jordan v. Sec'y of Educ. of the U.S.*, 194 F.3d 169, 169–170 (1999).

As part of the FFEL loan application process, the educational institution must certify to the lender that the student is eligible to receive the loan. 20 U.S.C. § 1078(a)(2). The institution's eligibility to continue in the FFEL program hinges on its compliance with the certification process. *See* 20 U.S.C. § 1094(a)(6).

Under the HEA as it existed in 1988, when McGuire began attending UMSL, an individual who had a high school diploma or a GED was eligible to receive FFEL loans, provided that they met citizenship, enrollment, and other requirements. *See* 20 U.S.C. § 1091 (1988); *see also Jordan*, 194 F.3d at 170.

---

[1] This program has also been known as the Robert T. Stafford Student Loan Program and the Guaranteed Student Loan Program. *See Chauffeur's Training Sch., Inc. v. Spellings*, 478 F.3d 117, 120 (2d Cir. 2007) (Stafford Student Loan); Pub. L. No. 102–325, § 411(a), 106 Stat. 448, 510 (1992) (Guaranteed Student Loan). For clarity, these programs will be referred to as FFEL and the loans issued thereunder will be referred to as FFEL loans.

Eligibility of students without a diploma or GED, however, depended upon the type of eligible post-secondary institution attended.[2]

In order to be considered "eligible" under FFEL, some institutions, such as a "vocational school," could only admit students that had completed or left secondary school and had the "ability to benefit" from the training offered by the institution. 20 U.S.C. § 1085(c) (1988). In contrast, for a nonprofit "institution of higher education" (such as UMSL) to be eligible, it could admit students who had a high school diploma, a GED, or were beyond the age of compulsory school attendance. 20 U.S.C. § 1085(b) (1988). Thus, unlike vocational schools, nonprofit institutions of higher education were not required to admit only students who had the ability to benefit. *Cf. id.* The Department issued regulations reflecting these provisions. *See* 34 C.F.R. § 668.8 (1988).

Until 1991, students "admitted on the basis of the ability to benefit" had to demonstrate that ability in order to "remain eligible" for FFEL loans. 20 U.S.C. § 1091(d) (1988); *Jordan*, 194 F.3d at 170. Section 1091(d) provided three ways by which a student could demonstrate her ability to benefit: (1) by earning a GED before graduating or within the first year of study; (2) by obtaining counseling before admission and completing a remedial education program; or (3) by passing

---

[2] As with students possessing a diploma or GED, these students also needed to meet citizenship and other criteria not at issue in this case.

a test "subject to criteria developed by the appropriate accrediting association" that measures the applicant's aptitude to successfully complete the program. § 1091(d). The Department also issued regulations implementing these provisions. *See* 34 C.F.R. §§ 668.7(a)(ii) (1988) (students attending institution of higher education), 668.7(a)(iv) (students attending vocational school), 668.7(b) (ability to benefit requirements).[3]

In 1991, Congress amended the HEA. *See* Higher Education Technical Amendments of 1991, Pub. L. No. 102-26, 105 Stat. 123 (1991). This amendment removed the requirement that an eligible school (including vocational schools) only admit students with the "ability to benefit." *See id.* at sec. 2(a)(2)–(3), 105 Stat. 123.[4] Congress also changed the student eligibility standards for both vocational schools and schools like UMSL. Instead of requiring only students who had been "admitted on the basis of the ability to benefit" to demonstrate that ability

---

[3] It is uncontested that this requirement did not apply to UMSL or UMSL students. However, the Department relied upon this language in its final decision denying McGuire's application for discharge. These statutory and regulatory provisions also provide context for the pertinent provisions. *See infra.*

[4] *Compare* 20 U.S.C. § 1085(c) (1988) ("[A] 'vocational school' . . . (1) admits as regular students only persons who have completed or left elementary or secondary school *and who have the ability to benefit . . . from the training offered by such institution*") (emphasis added) *with* 20 U.S.C. § 1085(c) (Supp. 1989–1992) ("[A] 'vocational school' . . . (1) admits as regular students only persons who have completed or left elementary or secondary school *or who are beyond the age of compulsory school attendance . . . .*") (emphasis added).

in order to remain eligible for FFEL loans, § 1091(d) now established a uniform eligibility requirement for all students who lacked a high school diploma or GED:

> (d) Testing of students who are not high school graduates
> In order for a student who does not have a certificate of graduation from a school providing secondary education, or the recognized equivalent of such certificate, to be eligible for any assistance under [certain student loan programs including FFEL], the student shall pass an independently administered examination approved by the Secretary.

§ 1091(d) (Supp. 1989–1992). This was the law in effect when McGuire took out her first FFEL loan in 1991.

In 1992, Congress again amended the HEA in response to public concern about schools that defrauded students who were unable to benefit from the school's training. *See Jordan*, 194 F.3d at 170; *see also* H.R. REP. 102-447, *10, *52, 1992 U.S.C.C.A.N. 334, 343, 385. Congress provided loan relief for borrowers who received loans beginning on or after January 1, 1986. 20 U.S.C. § 1987(c)(1) (Supp. 1989–1993). If the "student's eligibility to borrow under this part was falsely certified by the eligible institution . . . then the Secretary shall discharge the borrower's liability on the loan . . . ." *Id.* McGuire based her application for discharge on this portion of the law.

The Department established rules governing the discharge of claims based on a school's false certification of a borrower's eligibility; these rules continued to reference the pre-1991 eligibility requirements, including the "ability to benefit"

language. *See* 34 C.F.R. § 682.402(a), (e) (1994). A student's eligibility was deemed to have been falsely certified if the school "admitted the student on the basis of the ability to benefit from its training and the student did not meet the applicable requirements" set forth in section 682.402(e)(13). 34 C.F.R. § 682.402(e). A student seeking discharge must submit a written request and sworn statement attesting, in part, that the borrower (1) received proceeds from a loan on or after January 1, 1986, to attend a school and (2) was admitted to that school on the basis of the ability to benefit from its training and did not meet the applicable requirements as described in § 682.402(e)(13). 34 C.F.R. § 682.402(e)(3). Section 682.402(e)(13) provided that a student is considered to have the ability to benefit if the student "for periods of enrollment between July 1, 1987 and June 30, 1996, achieved a passing grade on a test" approved by the Secretary or successfully completed a remedial education program.

Effective July 1, 1995, the Department issued new regulations stating that a student's eligibility is considered falsely certified if the school "[c]ertified the student's eligibility for a FFEL Program loan on the basis of ability to benefit from its training and the student did not meet the applicable requirements in 34 CFR Part 668 and section 484(d) of the Act, as applicable and as described in paragraph (e)(13) of this section." Federal Family Education Loan Program, 59 FR 61,210-01, 61,216 (Nov. 29, 1994) (to be codified at 34 C.F.R. § 682(e)(1)(i)(A)). The

regulations continued to require a student borrower seeking discharge to state that she was admitted on the basis of the ability to benefit and did not meet the applicable requirements. 34 C.F.R. § 682.402(e)(3)(ii)(B) (1995).[5] The eligibility requirements set forth in 34 C.F.R. Part 668 sections 668.7 and 668.8 likewise remained the same. *Compare* 34 C.F.R. §§ 668.7, 668.8 (1995) *with* §§ 668.7, 668.8 (1988).

In addition to regulations, the Secretary issues guidance in the form of "Dear Colleague" letters.[6] One such letter, GEN-95-42, advises that the absence of any findings of ability-to-benefit admissions violations by audits of the institution raises an inference that none took place. In such a circumstance, the Department would not find a borrower's statement that she was "falsely certified" or "improperly tested" to be persuasive without additional evidence. ECF No. 1-1.

---

[5]    (13) Requirements for certifying a borrower's eligibility for a loan. (i) For periods of enrollment beginning between July 1, 1987 and June 30, 1991, a student who had a general education diploma or received one before the scheduled completion of the program of instruction is deemed to have the ability to benefit from the training offered by the school.
(ii) A student not described in paragraph (e)(13)(i) of this section is considered to have the ability to benefit from the training offered by the school if the student–
(A) For periods of enrollment beginning prior to July 1, 1987 . . .
(B) For periods of enrollment beginning on or after July 1, 1987, achieved a passing grade on a test [approved by the Secretary]. . .; or
(C) Successfully completed a program of developmental or remedial education provided by the school.

[6] These letters receive their name from their salutation, "Dear Colleague." *Gill v. Paige*, 226 F. Supp. 2d 366, 369 n.4 (E.D.N.Y. 2002).

*Maureen McGuire's Application for Discharge*

Plaintiff Maureen McGuire attended high school in St. Louis, Missouri. Although her high school transcript indicates that she met the listed graduation requirements, it also indicates "Diploma Not Granted." Thereafter, McGuire obtained 16 credit hours at a community college. McGuire was admitted to UMSL in 1988.

McGuire first applied for an FFEL loan on October 18, 1991. The Department awarded McGuire with eight FFEL loans from that time until May 1995. McGuire graduated from UMSL with a BSBA on August 6, 1995.

McGuire completed a Loan Discharge Application on May 24, 2010. In her application, McGuire certified under oath that she had neither a high school diploma nor GED at the time of her enrollment at UMSL, that she had not been given an entrance examination testing her ability to benefit prior to admittance, and that she never completed a developmental or remedial program at UMSL. In support of the Loan Discharge Application and subsequent administrative process, McGuire provided to the Department a copy of her high school transcript and her UMSL academic file. The UMSL academic file contains no evidence that she was administered or achieved a passing grade on a standardized ability-to-benefit test or that she completed a period of developmental or remedial education.

The Department denied McGuire's application for discharge on June 30, 2010. This letter provided several reasons for denial. It stated that at the time of McGuire's enrollment, schools were required to certify students lacking a high school diploma or GED as eligible by determining that the student had the ability to benefit.[7] False certification of a student's ability-to-benefit "occurs when a school admits a student without properly following ability-to-benefit procedures." After a review of audits of UMSL, the Department "found no corroborating evidence of ability to benefit violations at the school during [McGuire's] time of enrollment, . . ." ECF No. 1-3. McGuire requested a hearing, and in a letter dated July 13, 2010, the Department again considered the evidence and reiterated its reason for denial: "[t]he Department has no documentation of any violations by the school." ECF No. 10-4 at 33. The Department issued subsequent letters confirming the denial on October 27, 2010[8] and December 20, 2010.[9] Both letters provided essentially the same reason for denial: the absence of corroborating evidence from entities responsible for overseeing the school's compliance with ability-to-benefit regulations.

---

[7] The letter describes three standards by which schools could certify a student's ability to benefit: (1) receipt of a GED prior to completion of the program, (2) passage of a nationally recognized ATB test, or (3) completion of a remedial program.

[8] ECF No. 10-4 at 30.

[9] ECF No. 10-4 at 27.

McGuire filed a second application for discharge on June 24, 2011, and in a letter dated September 12, 2011, the Department again denied McGuire's discharge application. This letter cited a different reason for the denial: "During the period you were enrolled, students who earned a GED or successfully completed a program of developmental or remedial education are considered to have demonstrated the ability to benefit from the education offered. You certified under penalty of perjury that you did not earn a GED while enrolled in the program at the school. **However, our records indicate that you graduated from the program on August 3, 1995. Therefore, the school did not falsely certify your eligibility**." ECF No. 10-3 at 63 (emphasis in original).

Following a new discharge request dated March 18, 2013, the Department sent a letter dated December 16, 2013; this letter, representing the final decision of the Department, once again denied McGuire's application for discharge. In this final agency decision, the Department determined that McGuire was not eligible for discharge based on UMSL's alleged false certification of her ability to benefit because UMSL was not required to determine her ability to benefit or otherwise administer an ability-to-benefit test when certifying her loan eligibility.[10]

McGuire seeks summary judgment on her declaratory and injunctive relief claims against the Secretary, which allege that the Secretary's actions were

_____

[10] The pertinent text of this decision is set out earlier in this Memorandum and Order.

arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the HEA. The Secretary has filed a motion for summary judgment, arguing that the Department's decision complied with the Administrative Procedures Act, which provides the sole source of relief.

## Discussion

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court views the facts and makes inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Here the parties have stipulated that the facts are undisputed, and so only legal issues remain.

The Administrative Procedures Act requires the court to hold unlawful an agency action that is, *inter alia*, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. When considering whether an action is arbitrary and capricious, the court must "consider whether an agency's decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Motor Vehicle Mfrs. Ass'n v. State Farm*

*Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation omitted).  An agency's construction of a statute it administers will be deemed "not in accordance with law" when the agency's decision fails to "give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842–43 (1984).  When the statute is silent or ambiguous as to the specific issue, then the court assesses whether the agency's decision is based on a permissible construction of the statute.  *Id.* at 843.

McGuire argues that the regulations cited by the Department in its final decision denying her application, 34 C.F.R. § 668.7, were superseded and nullified by the 1991 and 1992 amendments to the HEA.  The Secretary argues that those amendments are not relevant to the *Chevron* inquiry because any determination regarding a student's ability to benefit, including the necessity of such determination, is made at the time of admission and not at loan application.  Since a student admitted to a nonprofit institution of higher education in 1988 did not need to be "able to benefit" in order to be eligible for an FFEL loan, the Secretary reasons, the school never needed to make an ability to benefit determination.

The Secretary cites to various sections of the 1988 version of the HEA and the implementing regulations related to the definitions of an "eligible institution,"

such as a "vocational school."[11]  The Secretary contends that the importance placed by those sections on the time of admittance reflects a policy that a student's ability to benefit be determined at admission.

Whether a student was "*admitted on* the basis of the ability to benefit" has no lasting relevance to McGuire's case.  Following the 1991 and 1992 amendments to the HEA, that phrase was categorically stricken from the Part B of the HEA – the Part housing the FFEL program, and from Part F – the Part housing general definitions and the student eligibility requirements, including § 1091.  *Compare* 20 U.S.C. §§ 1071–1087-2; 1088–1091 (1988) *with* 20 U.S.C. §§ 1071–1087; 1088– 1091 (Supp. 1989–1993).  Unlike the pre-amendment HEA, which only imposed able-to-benefit eligibility requirements on students who were "admitted on the basis of the ability to benefit," the amended HEA categorically required any student not possessing a high school diploma or GED to pass an examination approved by the Secretary in order to be eligible for FFEL loans.  *Compare* § 1091(d) (Supp. 1989–1992) *with* § 1091(d) (1988).  To the extent that the Department determines FFEL loan eligibility based on whether a student was "admitted on the basis of the ability to benefit," that determination is not in

---

[11] *See, e.g.*, 20 U.S.C. § 1985 (1988) (defining "vocational school" an institution that "admits as regular students only persons . . . who have the ability to benefit . . . .").

accordance with the HEA as it existed after July 1, 1991, the effective date of the 1991 amendments.

Congress's intent as to student FFEL eligibility requirements is clearly articulated in the statute. The relevant inquiry is simply whether UMSL falsely certified McGuire as an eligible student. This certification occurs when the student applies for the loan. *See* § 1087 (Supp. 1989–1993); *see also* §§ 1078(a)(2) (1988 & Supp. 1989–1993); 1094(a)(6) (1988 & Supp. 1989–1993).

The Department's own regulations recognize this principle. Section 682.402(e)(13) analyzes whether a student was able to benefit according to the standards in effect during the relevant "period of enrollment." Period of enrollment is defined as "the period for which a[n FFEL] loan is intended." Federal Family Education Loan Programs, 57 Fed. Reg. 60,280-1, 60,288 (Dec. 18, 1992); 34 C.F.R. § 682.200(b) (1993).

Despite the clear intent of Congress that all students lacking a diploma or GED be tested to be eligible, the Department failed to issue new regulations governing student eligibility. Instead, the regulations retained the 1988 student eligibility standards, including the FFEL exemptions from ability-to-benefit requirements for students attending nonprofit institutions of higher education.

*Compare* 34 C.F.R. § 668.7 (1988) *with* § 668.7 (1991–1994).[12] These regulations impose manifestly different eligibility requirements than prescribed by Congress. *Compare* 34 C.F.R. § 668.7 (1991–1993) *with* 20 U.S.C. § 1091(d) (1988) *and* § 1091(d) (Supp. 1989–1992). The regulations implementing § 1087's discharge provisions likewise conflict with the HEA.

Section 1087, which allows for loan discharge upon a showing that a school falsely certified a student's FFEL eligibility, is clear. That section states that if a "student's eligibility to borrow under this part was falsely certified by the eligible institution, then the Secretary shall discharge the borrower's liability on the loan . . . ." 20 U.S.C. § 1087 (Supp. 1989–1993).

---

[12]     (a) <u>Eligibility</u>. A student is eligible to receive assistance under the Pell Grant, SEOG, SSIG, [FFEL], PLUS, SLS, CWS, ICL, and Perkins Loan programs if the student –
>    (1) [meets enrollment requirements in an eligible program]
>    (2) Is not enrolled in either an elementary or secondary school
>    (3)     (i) Has a high school diploma or [GED]
>    (ii) If enrolled at a public or private nonprofit institution of higher education –
>>        (A) Is above the age of compulsory school attendance . . . ; and
>>        (B) Except for the [FFEL], PLUS, or SLS programs, has the ability to benefit . . . ;
>    (iii) If enrolled at a proprietary institution of higher education or postsecondary vocational institution –
>>        (A) Is above the age of compulsory school attendance . . . ; and
>>        (B) Has the ability to benefit . . . ; or
>
>    (iv) If enrolled at a vocational school, has the ability to benefit . . . ;
>    . . . .

The 1994 regulations implementing § 1087 define false certification as occurring if the school "admitted the student on the basis of the ability to benefit from its training and the student did not meet the applicable requirements" set forth in section 682.402(e)(13). 34 C.F.R. § 682.402(e) (1994) (emphasis added). While the 1995 (and subsequent) regulations no longer explicitly defined false certification as having occurred when a school "admitted" a student on the basis of ability to benefit who lacked that ability, those regulations continued to incorporate the conflicting student eligibility provisions from 34 C.F.R. section 668.7.[13] Additionally, they required that a borrower state that she was admitted on the basis of ability to benefit and did not meet the requirements in paragraph (e)(13) in order to qualify for discharge. 34 C.F.R. § 682.402(e)(3) (1995). By failing to change the regulations to reflect the HEA's new eligibility standards, the Department changed the nature of the statute.

The Department's failure to update its regulations to comport with the amended HEA imposed outdated eligibility standards and placed additional burdens on McGuire. These additional burdens – that she show she was admitted on the basis of her ability to benefit and prove that she did not meet the applicable

_____

[13] False certification occurs when a school has "[c]ertified the student's eligibility for a FFEL Program loan on the basis of ability to benefit from its training and the student did not meet the applicable requirements in 34 CFR Part 668 and section 484(d) of the Act, as applicable and as described in paragraph (e)(13) of this section." 34 C.F.R. § 682.402(e) (1995); *see also* 34 C.F.R. § 682.402(e) (2014).

requirements for admission on that basis – were not required under the HEA. This court concludes that the "admitted on the basis of the ability to benefit" requirements set forth in 34 C.F.R. sections 682.402(e) and 668.7, represent an impermissible interpretation of the standards required for a student to obtain discharge under 20 U.S.C. § 1987(c)(1).[14] As such, the Department's denial under section 682.402(e) represents an act contrary to the law and must be reversed.

The Secretary argues that its decision letter from June 30, 2010, provides an independent ground by which the Department's denial may be upheld. Normally, a reviewing court must affirm or reverse agency decisions on the basis of the reasons given by the agency. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943); *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). However, a reviewing court may affirm an agency decision for reasons other than provided by the agency, where it was clear that the agency would have reached the same ultimate result. *See Consolidation Coal Co. v. Smith*, 837 F.2d 321, 323 n.4 (8th Cir. 1988) (citing *Salt River Project Agric. Improvement and Power Dist. v. United States*, 762 F.2d 1053, 1060-61 n.8 (D.C. Cir. 1985)).

In its June 30 letter, the Department denied McGuire's application on the ground that she offered "no corroborating evidence of ability to benefit violations

---

[14] This applies only so far as for periods of enrollment following the 1991 Amendments to the HEA.

at the school" during her enrollment.[15]  The Secretary argues that this denial

complied with the Department's "Dear Colleague" guidance letter GEN-96-42,

ECF No. 1-1, which requires an applicant for false certification discharge to

provide "some other evidence that as a result of improper [ability to benefit]

admissions practices, students were admitted on the basis of [ability to benefit]

who should not have been admitted."  ECF No. 1-1 at Questions and Answers ¶ 1.

However, that guidance conflicts with the regulation, which requires the borrower

to "provide *upon request* . . . other documentation *reasonably available to the*

*borrower*, that demonstrates" that the student is qualified for discharge.  34 C.F.R.

§ 682.402(e)(3)(vi) (2009) (emphases added).  There is no evidence of record that

the Department requested corroborating evidence of McGuire's qualifications.[16]

Any requirement that McGuire submit corroborating evidence absent the

Department's request is contrary to the Department's own regulations.  Moreover,

it is unclear whether the Department applied the same impermissible standards in

---

[15] The Department takes the quote out of context.  Instead, the decision letter states that the Department "has reviewed information from entities responsible for overseeing the school's compliance with the ability-to-benefit regulations, and has found no corroborating evidence of ability to benefit violations at the school during your time of enrollment . . . ."  ECF No. 1-3.

[16] Instead, the record shows that McGuire submitted her high school and collegiate academic transcripts as well as her UMSL Application.  These materials establish that McGuire was not issued a high school diploma, did not have a GED, and they do not show that she ever completed a remedial program or test designed to gauge her ability to benefit.

this decision that required reversal of the final decision. The June 30 letter does not provide an alternative basis for denial.[17]

McGuire has shown that the Department's denial of her loan discharge application was based on regulations that conflict with the unambiguous intent of Congress. As such, the denial must be reversed. However, an injunction or declaratory relief is inappropriate in this case. *See* 20 U.S.C. § 1082(a)(2) (allowing the Secretary to be sued but prohibiting injunction or other similar process from being issued against the Secretary). The Secretary also notes, and McGuire does not contest, that additional fact-finding may need to be done at the administrative level to ensure that McGuire qualifies for discharge once the appropriate standards are applied. This case will be remanded to the Secretary for further proceedings in accordance with this Order.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Maureen McGuire's motion for summary judgment [# 14] is granted. The determinations of the Department are reversed, and McGuire's applications are remanded to the Department for further proceedings.

---

[17] The Secretary does not contend that reasons given in the denial dated September 12, 2011, could constitute adequate alternative grounds.

**IT IS FURTHER ORDERED** that the motion for summary judgment

[# 16], filed by Defendant Arne Duncan, Secretary of the United States

Department of Education, is denied.

A separate judgment in accord with this Memorandum and Order is entered

this same date.


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 29th day of September, 2015.